**DISTRICT COURT, COUNTY OF DENVER**
**STATE OF COLORADO**
1437 Bannock Street, Room 256
Denver, CO 80202
303-606-2300

DATE FILED: September 24, 2021 4:34 PM
FILING ID: F720842B50B86
CASE NUMBER: 2021CV33020

**Plaintiff:** COLORADO ACCESS

v.

**Defendants:** ATLANTIC SPECIALTY INSURANCE
COMPANY; THE MEDICAL PROTECTIVE
COMPANY

▲ **COURT USE ONLY** ▲

Case Number:

*Attorneys for Plaintiff:*
Bradley A. Levin, No. 13095
Kerri J. Rugh, No. 29966
**LEVIN SITCOFF PC**
1512 Larimer Street, Suite 650
Denver, Colorado 80202
Phone Number: 303-575-9390
Fax Number: 303-575-9385
bal@levinsitcoff.com
kjr@levinsitcoff.com

Div.:

**COMPLAINT AND JURY DEMAND**

Plaintiff, Colorado Access, by and through its counsel, LEVIN SITCOFF PC, states and alleges as follows for its Complaint and Jury Demand:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Colorado Access is and was, at all times pertinent, a Colorado nonprofit corporation with its principal place of business in Colorado.

2.     Upon information and belief, Defendant Atlantic Specialty Insurance Company ("ASIC") is incorporated under the laws of the State of New York with its principal place of business in Minnesota, and is authorized to do business and is doing business in the State of Colorado.

3.     Upon information and belief, Defendant The Medical Protective Company ("MedPro") is incorporated under the laws of the State of Indiana with its principal place of business in Indiana, and is authorized to do business and is doing business in the State of Colorado.

4.      This Court has personal jurisdiction over Defendant pursuant to C.R.S. § 13-1-124(a) and (b), and it has subject matter jurisdiction over the claims asserted herein.

5.      Venue is proper in this district pursuant to C.R.C.P. 98(c), which Plaintiff designates as the place of trial of this action.

## GENERAL ALLEGATIONS

6.      Plaintiff Colorado Access is a nonprofit corporation operating as a managed care organization that, among other things, administers behavioral health benefits to persons enrolled in Medicaid pursuant to contracts that Colorado Access has with the State of Colorado.  Colorado Access enters into agreements with behavioral health providers to provide Medicaid-covered services to Colorado Access' attributed Medicaid Members, including facility providers.  Among the facility providers that Colorado Access contracts with for covered services are providers of residential behavioral health services, called Institutions of Mental Disease ("IMD's").

7.      These Facility Provider Agreements ("FPA's") allow for payments to be made for certain inpatient treatment provided at IMD's.  When a Medicaid-eligible person is admitted to an IMD, the operator submits a claim to Colorado Access which, in turn, processes the payment according to the terms and conditions of the FPA's.

8.      Cedar Springs Hospital, Inc., USH of Denver, and UHS of Centennial Peaks (collectively, the "Operators") are operators of IMD's.  The Operators notified Colorado Access in August 2019 that they believed certain payments under the FPA's had been improperly denied or recouped pursuant to a disputed term of the agreements.  According to Colorado Access, the Operators were not entitled to any payments for Medicaid patients who had been admitted to their facilities for periods of longer than 15 days.  The Operators, on the other hand, asserted that they should be paid for a minimum of the first 15 days of an admission that was longer than 15 days.

9.      At that time, Colorado Access was insured under a Managed Care Errors and Omissions Liability Policy issued by ASIC, Policy No. MCR-10672-19 (the "Policy"), for the period February 27, 2019 – February 27, 2020.  The Policy provides that ASIC will pay "**Damages** and **Claim Expenses** in excess of the Retention that **you** are legally obligated to pay as a result of a **Claim** for:  (A) an act, error, or omission . . . committed by **you** or on **your** behalf in the performance of a **Managed Care Activity**" first made against Colorado Access during the Policy period.

10.      Accordingly, Colorado Access tendered the Operators' claims to ASIC under the Policy on August 26, 2019.  ASIC accepted the tender the following day, and retained counsel to represent Colorado Access.

11.      When further discussions between the parties failed to result in a resolution, the Operators formally demanded the dispute be submitted to binding arbitration pursuant to a term in the FPA that sets forth processes for dispute resolution.  Colorado Access again tendered the formal arbitration demand for coverage by ASIC.

12.     Over the next several months the parties prepared for the arbitration while retained counsel communicated with ASIC about the progress the case was making.  The arbitration occurred in June 2020 and concluded with a decision against Colorado Access.  It was revealed three months later that the arbitrator had a disqualifying conflict that he failed to disclose and so the arbitration was vacated.  With the parties being in a position of having to pick a new arbitrator and new arbitration date, Colorado Access started discussing efforts to settle the case and decided that an offer would be extended to the Operators.

13.     At this time MedPro, through Caroline Carlson, advised Colorado Access that it was handling the claim on behalf of ASIC.  Ms. Carlson immediately began requesting information from Colorado Access about a litigation budget and a conference call to discuss the case.  Regular communications continued over the following weeks, during which Ms. Carlson participated and offered thoughts and assessments about the case and settlement.  Ms. Carlson indicated in an email on November 17, 2020, that while coverage for a settlement was unlikely, ASIC/MedPro would not take the position that Colorado Access did not have the consent of the carrier to engage in the settlement efforts.

14.     By April 2021, the parties had reached an agreement to settle the Operators' claims.  At all times, Ms. Carlson was kept apprised of the status of the case.  Retained counsel provided Ms. Carlson with drafts of the settlement agreement and requested her input and approval, which she provided.  Ms. Carlson never objected to any terms or conditions of the settlement.  Indeed, Ms. Carlson expressed her delight over the settlement.  The final agreement was signed on April 23, 2021 and after receipt of a copy, Ms. Carlson again remained silent.

15.     After funding the settlement, Colorado Access sought reimbursement for the payment from ASIC.  By letter dated August 12, 2021, coverage counsel for MedPro asserted on ASIC/MedPro's behalf that the settlement was not covered under the Policy because MedPro "was only advised of the settlement after it was reached and thus did not provide written consent to same as required under the Policy."  Based on the multiple communications with Caroline Carlson surrounding the settlement, this position was wrongful.

16.     In addition, counsel asserted on ASIC/MedPro's behalf that the settlement did not meet the Policy definition of Damages, and that coverage would otherwise be barred by several exclusions.  In particular, ASIC/MedPro declared that the settlement amount was not "Damages" because the definition

. . . does not include:

(1) any fine, penalty, forfeiture, sanction, tax, fee, liquidated damages, or amount imposed by statute, rule, regulation, or other law; . . .

***

(3) any payment, restitution, return, or disgorgement of any fee, profit, royalty, premium, commission, or charge, or any fund allegedly

3

> wrongfully or unjustly held or obtained, including but not limited to
> any profit, remuneration or advantage to which **you** were not legally
> entitled;
>
> (4) Any amount any of you pay or may be obligated to pay under any
> contract or agreement, including but not limited to any policy, bond,
> benefit plan, or provider agreement;
>
> ***

17.     ASIC/MedPro wrongfully concluded that the settlement – based on the arbitration – was excluded from the definition of Damages.  The amount Colorado Access agreed to pay was not any fund that Colorado Access had obtained from the Operators or was holding onto in a wrongful or unjust manner and that Colorado Access was having to return.

18.     Similarly, the settlement was not representative of any amount that Colorado Access was contractually bound to pay the Operators.  To the contrary, Colorado Access maintains that it had no contractual obligation at all with respect to the settlement payment, but rather made a business decision to resolve its differences with the Operators given the failure of the FPA's to expressly address Medicaid patients whose stays were longer than 15 days.

19.     Nor could the settlement payment be construed as a fine, penalty, forfeiture, or any such amount that was imposed by a statute, rule, regulation or other law.  Again, Colorado Access made a business decision to settle that was not dictated or driven by any strictures of the Medicaid statutes.

20.     None of the other Exclusions cited by ASIC/MedPro apply.

## <u>FIRST CLAIM FOR RELIEF</u>
### (Breach of Contract Against ASIC)

21.     Plaintiff incorporates all allegations of this Complaint as if fully set forth herein.

22.     The Policy constitutes a contract of insurance.

23.     All terms and conditions precedent to Colorado Access' right to obtain the benefits of the Policy, namely, reimbursement for the settlement of the Operators' Claim, were satisfied.

24.     ASIC, through MedPro, refused to indemnify Colorado Access as requested and denied that coverage existed under the Policy for the Operators' requested relief.

25.     The Policy, to the contrary, provided coverage for the settlement according to its plain and unambiguous terms and conditions.

26. ASIC's failure and refusal to accept liability for the settlement payment therefore constitutes a breach of the contract.

27. As a direct and proximate result of ASIC's failure and refusal, Colorado Access has suffered damages in amounts to be proved at trial.

## SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract Against ASIC and MedPro)

28. Plaintiff incorporates all allegations of this Complaint as if fully set forth herein.

29. ASIC and MedPro owed duties to Colorado Access under which they would, in good faith and in the exercise of fair dealing, deal with Colorado Access fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Colorado Access's rights to receive the benefits of the Policy.

30. ASIC and MedPro breached these duties of good faith and fair dealing by their actions, which include, without limitation, the following unreasonable acts:

    a.    Denying coverage to Colorado Access without conducting a reasonable investigation based upon all available information;

    b.    Failing to promptly provide Colorado Access with a reasonable explanation of the basis in the Policy in relation to the facts and applicable law for the denial of its indemnity obligations with respect to the arbitration;

    c.    Failing to pay for the settlement of the arbitration that had been reached with the input and authorization of ASIC/MedPro;

    d.    Placing their interests above those of Colorado Access; and

    e.    Other conduct to be revealed in discovery.

31. ASIC and MedPro's unreasonable conduct includes violations of C.R.S. § 10-1-101, subparts of C.R.S. § 10-3-1104(1)(h), and industry standards and laws governing the conduct of insurers in the State of Colorado

32. As a direct and proximate result of ASIC and MedPro's bad faith breaches of insurance contract, Colorado Access has suffered damages in amounts to be proved at trial.

## THIRD CLAIM FOR RELIEF
### (Violation of C.R.S. Sections 10-3-1115 and 10-3-1116 Against ASIC and MedPro)

33. Plaintiff incorporates all allegations of this Complaint as if fully set forth herein.

34.     C.R.S. § 10-3-1115 forbids those engaged in the business of insurance from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

35.     Colorado Access is a first-party claimant for purpose of C.R.S. § 10-3-1115.

36.     ASIC and MedPro denied coverage to Colorado Access without a reasonable basis in violation of C.R.S. § 10-3-1115.

37.     ASIC and MedPro failed to promptly and appropriately respond to Colorado Access's request for payment of the settlement amount under the Policy's coverage, which constitutes unreasonable conduct violative of C.R.S. § 10-3-1115.

38.     C.R.S. § 10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed or denied may bring an action to recover reasonable attorney's fees and court costs, plus two times the covered benefit.

39.     Colorado Access brings this claim to recover its reasonable attorney's fees and court costs, plus two times the covered benefit, pursuant to C.R.S. § 10-3-1116.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Colorado Access, requests that the Court enter judgment in its favor and against Defendants Atlantic Specialty Insurance Company and The Medical Protective Company, and award damages as follows:

a.     For consequential and compensatory damages in amounts to be proved at trial;

b.     For two-times the covered benefit as permitted by C.R.S. § 10-3-1116(1);

c.     For reasonable attorneys' fees, costs, and expenses incurred herein;

d      For all pre- and post-judgment interest, statutory and moratory, as permitted by law; and

e.     For such other and further relief as the law permits and this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

DATED this 24th day of September 2021.

Respectfully submitted,

**LEVIN SITCOFF PC**

*/s/ Bradley A. Levin*
Bradley A. Levin
Kerri J. Rugh
***Attorneys for Plaintiff***

<u>**Plaintiff's Address:**</u>
11100 East Bethany Drive
Aurora, CO  80014